UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

GUIDEONE SPECIALTY MUTUAL INSURANCE COMPANY,

                Plaintiff,

    -against-                             04 Civ. 8969(CM)

CONGREGATION BAIS YISROEL, ISRAEL LICHTENSTEIN,
SHAINDY LICHTENSTEIN, JACOB FRIED, NAOMI FRIED,
SHLOME SCHWARTZ, and CHANA SCHWARTZ,

                Defendants.
_____x

MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
DISMISSING IN PART DEFENDANTS' COUNTERCLAIMS

McMahon, J.:

        Plaintiff GuideOne Specialty Mutual Insurance Company ("GuideOne") brings this

action against Congregation Bais Yisroel ("the Congregation") and Israel Lichtenstein, Shaindy

Lichtenstein, Jacob Fried, Naomi Fried, Shlome Schwartz, and Chana Schwartz ("Individual

Defendants"), seeking declaratory judgment that the plaintiff is not obligated to defend and/or

indemnify the Congregation in a pending personal injury action brought against the

Congregation by the Individual Defendants ("Underlying Action").

        GuideOne asserts three reasons why it is not liable under the policy: (1) the Congregation

made material misrepresentations on its insurance application; (2) the Congregation failed to

cooperate in the defense of the Underlying Action, in material breach of its GuideOne policy; (3)

the Congregation violated Article 4 of New York Insurance Law § 403.

On January 6, 2005, the Congregation answered GuideOne's complaint, generally denying the allegations and asserting two counterclaims: (1) GuideOne's attempt to avoid its obligations under the policy violated New York General Business Law § 349 and New York Insurance Law § 2601; and GuideOne breached its contract with the Congregation when it refused to defend and indemnify the Congregation in the Underlying Action.

On March 21, 2005, plaintiff moved for summary judgment. The Congregation filed a cross-motion for summary judgment on April 5, 2005. The Congregation also sought a default judgment on its counterclaims.

For the following reasons, the plaintiff's motion for summary judgment is denied and the Congregation's motion for summary judgment is granted in part and denied in part. The motion for a default judgment is denied. The Congregation's first counterclaim is dismissed.

## Background

### The Insured Property

Rabbi Hyman Werzberger began serving as the Congregation's rabbi in 1984. In anticipation of his arrival, the Congregation began construction of a synagogue and rabbi's residence (the Building). The Building was funded entirely by donors to the Congregation.

The Building was constructed on land located at 2 Rimenev Court in Monroe, New York, in 1983 (the Property). A woman named Esther Bickel held the deed to the Rimenev Court property from at least 1984 until 2003, when she deeded the Property to the Congregation, care of Rabbi Werzberger, in 2003.

Although Bickel held legal title to the Property, she allowed the Congregation to build and operate the synagogue and residence without ever receiving any payment therefor. Neither did she execute a lease or any other kind of written agreement with the Congregation. It is undisputed that the Congregation never made any payments to Bickel for its use of the Subject Property prior to the time it took legal title to the Property.

**The Policy and the Application**

On or about April 13, 2001, GuideOne issued policy number 1210-850 of general commercial liability insurance to the Congregation and Esther Bickel for the period 4/13/01 to 4/13/02. The application sought coverage for two premises: 2 Rimenev Court #201 and 1577 Schunnemunk Road. The latter property is not involved in the present lawsuit.

The policy application was a form application issued by Brooks Insurance Agency of Englishtown, New Jersey. (Exhibit H to the Declaration of Milton Thurm In Support of Plaintiffs' Motion for Summary Judgment, dated March 18, 2005 ("Thurm Decl.").) In a space headed "Applicant Information," the applicants were instructed to identify the "First Names Insured & Other Named Insureds." The names "Congregation Bais Yisroel & Esther Bickel" were inserted in this space. The mailing address was given as "c/o Hyman Werzberger, 2 Riminev Ct. #201, Monroe NY 10950." Under "Premises Information," Location #1 is described as "2 Rimenev Ct. #201, Monroe, NY 10950." The number of buildings on that premises is listed as "1." The building is identified as having been built in 1983. It is described as "Synagogue with 1 apt."

Most significant for our purposes, the application contains a column under the heading "Premises Information" labeled "Interest." Beneath that heading there are two boxes, one labeled

"Owner," and one labeled "Tenant." The "Owner" box is checked. No distinction was drawn between the Congregation and Bickel in this regard. A box labeled "Part Occupied" (presumably, the part of the Premises occupied by any insured, although there are no instructions so stating) was not filled in.

All but one page of the pre-printed application – including the page on which the sections "Applicant Information" and "Premises Information" appear – have at the bottom a box labeled "Remarks," containing blank space into which (presumably) additional information can be inserted. There are no instructions on how to fill out the "Remarks" boxes or to what they pertain. On all pages, including the page at issue here, the "Remarks" box is left blank.

**The Accident and Underlying Action**

On October 4, 2001, during the coverage period of the subject policy, a porch collapsed at 2 Rimenev Court, allegedly injuring the Individual Defendants. On January 4, 2002, the Individual Defendants (as plaintiffs) sued the Congregation in the Kings County Supreme Court.

The Congregation notified GuideOne of the Underlying Action and sought defense and indemnification pursuant to the terms of the policy. GuideOne assigned the Congregation's defense of the Underlying Action to the law offices of Simon Lesser, P.C. ("Simon Lesser"). A note of issue has been filed and the case is pending trial. Simon Lesser has appeared for the Congregation throughout.

On August 23, 2004, GuideOne filed this lawsuit against the Congregation and the Individual Defendants in the Orange County Supreme Court. There being complete diversity, the Individual Defendants (who were presumably named due to their potential interest in the policy proceeds) timely filed a Notice of Removal.

**Standard of Review**

A party is entitled to summary judgment when there is no "genuine issue of material fact," and the undisputed facts warrant judgment for the movant as a matter of law. FED. R. CIV. P 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ("Anderson II"). In considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court determines whether there exist any disputed material facts. Balderman v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989).

The substantive law that governs the case determines which facts will be material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson II, supra, 477 U.S. at 248. The moving party bears the initial burden of demonstrating the absence of disputed material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-movant must present "specific facts showing that there is a genuine issue for trial." FED R. CIV. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the non-movant must produce evidence in the record and "may not rely simply on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). To avoid summary judgment, the non-movant must produce evidence that is significantly probative rather than merely colorable. Anderson II, supra, 477 U.S. at 249-50

(citations omitted). In short, a nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**A. The Congregation Is Entitled to Summary Judgment on the Issue of Misrepresentation Because There Was No Misrepresentation.**

The subject policy states as follows**:**

Representations. By accepting this policy, you agree:

a) The statements in the Declarations are accurate and complete;

b) Those statements are based upon representations you made to us; and

c) We have issued this policy in reliance upon your representations**.**

(Thurm Decl. Exh. G, at 14-15.) GuideOne alleges that the Congregation misrepresented the nature of its interest in the property.

Under New York Insurance Law, a misrepresentation is "a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a) (McKinney 2000). Insurance contracts may be voided and recovery defeated only when a policyholder has made a material misrepresentation (i.e., one that would have led the insurer to refuse to enter into the contract of insurance in the first place).

So if the Congregation misrepresented the nature of its interest in the property on its insurance application and if that misrepresentation was material, GuideOne could rescind the policy and deny coverage to the insured. However, there was no misrepresentation. Both Bickel and the Congregation had ownership interests in the Premises – Bickel in the Property and the

Congregation in the Building. Therefore, GuideOne's first cause of action must be summarily dismissed.

As noted above, it is undisputed that Bickel held legal title to the Property and that the Congregation built and used the Building at its own expense, without ever entering into a written agreement of lease or paying any rent for the use of the Property. The question is whether this made Bickel, the Congregation, or both of them the "Owner" of the insured Premises.

Predictably, GuideOne and the Congregation advance conflicting definitions of "ownership." GuideOne focuses on the formalities of ownership, while the Congregation relies on its possession and operation of the Building to assert an equitable ownership interest. GuideOne directs the Court's attention to the deed of transfer from Bickel to the Congregation in 2003, (Thurm Decl. ¶ 14.) while the Congregation insists that, as it was never a "tenant" on Bickel's land, it had to be an "Owner." (Congregation Bais Yisroel's Statement Disputing Facts Pursuant to Local Rule 56.1, dated April 5, 2005, ¶¶8-9 ("CBY 56.1 Disputing Stmt.").)

As the Second Circuit observed in Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321, 327 (2d Cir. 2000), the meaning of ownership can be ambiguous and in some cases is subject to interpretation. Black's Law Dictionary equivocates between titular and possessory ownership, simultaneously defining an owner as "one who has the right to possess, use, and convey something" and "one recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else." Black's Law Dictionary 1130 (7th ed. 1999). The latter definition is sometimes called "equitable ownership" – a phrase also used when a parcel is held in trust for another party. Id.

In its Rule 56.1 Statement of Material Facts, GuideOne asserted that, "The Congregation did not become owner of the premises until March 24, 2003 when Esther Bickel deeded the premises to the Congregation." (GuideOne's Local Rule 56.1 Statements of Material Facts, dated March 18, 2005, ¶ 8 ("GO 56.1 Stmt.").) In its own Rule 56.1 filing, the Congregation admitted that Bickel held legal title to the Property from 1984 to 2003. (Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated April 5, 2005, ¶ 6 ("CBY 56.1 Undisputed Stmt.").) However, the Congregation also asserted – without dispute – that it built and paid for the Building, that there was no lease agreement between the Congregation and Bickel, and that it paid her no rent.(CBY 56.1 Disputing Stmt. ¶¶ 8-9.) From this, it argues, it was the Owner of the Building located on a piece of property that was, until recently, owned by Bickel.

GuideOne offers no evidence tending to show that Bickel ever claimed any ownership interest in the Building. Nor does it cite any law that holds that the title owner of land on which a structure sits automatically owns the structure.[1] Frankly, the conclusion that the Congregation "owned" the Building – albeit not the land on which it sat – is inescapable.

Moreover, it is the Building, not the land, that is the insured Premises under the Policy. The Commercial Property Coverage Part Declarations Page of the Policy states, "This Policy covers the property listed below." It goes on to describe "Risk No. 001" as the frame construction building containing a synagogue and apartment, located at 2 Rimenev Court #201 (The page says that "this policy covers the property listed below." (Thurm Decl. Exh. G, at 11.)

---

[1] There is, of course, no such law. To take but one example: Many apartment buildings, especially cooperative apartment buildings in New York City, sit on land that is owned by someone other than the cooperative corporation. Yet the corporation owns the building.

It is clear from the terms of the Policy that it is the Building that is covered. The policy states as follows:

A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations cause by or resulting from any Covered Cause of Loss.

1. Covered Property, as used in this Coverage Part, means the type of property described in this section A.1.. . .

a. Building, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and
(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;
(b) Outdoor furniture;
. . .

(Thurm Decl., Exh. G, at 1 of 18.) Thus, the Building is insured. And the Building indisputably was owned by the Congregation. Therefore, there was no misrepresentation when the Congregation declared that it was an Owner of the Subject Premises. Indeed, for the Congregation to label itself as a "tenant" on an application for liability insurance, when it built,

paid for, and operated the Building, without paying any rent of any sort to Bickel, would have been manifestly incorrect.[2]

Even if the above analysis were not correct – that is, even if the Congregation did not "own" the building that is covered under the policy – it would be entitled to judgment on this claim under the doctrine that an answer to an ambiguous question cannot be the basis for a misrepresentation claim.

An answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the position of the insured could have rationally interpreted the question as the insured did. Fanger v. Manhattan Life Ins. Co., 273 A.D.2d 438, 439, 709 N.Y.S.2d 622, 624 (2d Dep't 2000). Contract language is unambiguous "when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Care Travel Co., Ltd. v. Pan American World Airways, Inc., 944 F.2d 983, 988 (2d Cir. 1991) (quotation marks and citations omitted).Whether an ambiguity exists is a question of law to be determined from the viewpoint of "a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002); Garcia v. American Gen. Life Ins. Co., 264 A.D.2d 808, 809, 695 N.Y.S.2d 420, 421 (2d Dep't 1999).

---

[2] GuideOne does not here claim that the Congregation made a material misrepresentation when it listed Bickel as the "Owner" of the Subject Premises, and since she did indeed own the Property under the Building,  there was no misrepresentation on this score, either.

The Second Circuit has held that if an insurance company drafted ambiguous questions on an application form, the ambiguity is "to be resolved against the company in determining whether the answers are false." Brayer v. John Hancock Mut. Life Ins. Co., 179 F.2d 925, 928 (2d Cir. 1950). That, of course, is simply a corollary to the settled rule that ambiguities in a contract are construed against the drafter of the contract.

I have outlined the relevant sections of the application above. "Premises Information" called on the applicant to list the number of buildings at a particular location, the address of the location, the interest that the applicant had and the year the building was built. The column headed "Interest" does not specify whether the interest is to be in the location, or in the building found at the location, or both. The application is ambiguous to that extent.

The application had a box where the insured was to specify its interest in the Premises. The applicant had two choices: she could check off either "owner" or "tenant." There was no space in the "Premises Information" portion of the application to provide additional information about ownership interests in the property to be insured, and as noted above, the "Remarks" section does not specify what sort of remarks are to be inserted therein. (Thurm Decl. Exh. H, at 2.)

Since the Congregation owned the building to be insured, it was rational for the Congregation to classify its insurable interest as one of ownership. And since Bickel held title to the underlying land, it was equally rational for the Congregation to indicate that she, too, had an ownership interest in the premises (land plus building) at 2 Rimenev Court. Indeed, it is difficult to imagine how much more precise, within the limits of the application, the Congregation could have been.

If anything, the question on the application regarding the insured's "interest" in the premises to be covered was overly simplistic, which made it ambiguous. The application form did not provide instructions for how to indicate the nature of different insurable interests when multiple parties are owners of various interests in a subject property. GuideOne's Underwriting Manager for the Midwest, Steven Renner, admits that the application does not ask for any information regarding ownership other than to check off "owner" or "tenant:"

> Q: Other than the area on the application that says interest, is there any other place on this form where a person can indicate who an owner was and who a tenant was of a particular property they were seeking insurance for?
>
> A: I can't legibly read this one.
>
> Q: Look at this one.
>
> A: I will look at this one. No. No, it's only the main interest on the front page of the application.

(Renner Depo. at 54:19-55:4.) Renner also admits that there was no direction on the application form of how to properly indicate multiple interests:

> Q: But there are certainly no instructions with respect to how to list there on the form, is there?
>
> A: Not that I see.

(Renner Depo. at 54:3-6.)

The application form can only be construed as unambiguous if there was a clear and precise meaning to be extracted from the terms and no reasonable basis for difference of opinion. Supra, 944 F.2d at 988. Even Steven Renner indicated that it was unclear from the application form how the Congregation should indicate the nature of its and Esther Bickel's separate

interests in the premises to be insured. It was certainly not unreasonable for the Congregation to interpret the application as it did.

I conclude that the Congregation provided an answer reflecting a rational interpretation of the form's language. The Congregation did not misrepresent the nature of its interest in the insured premises.

**B. GuideOne Is Not Entitled to Summary Judgment on its Second Cause of Action Because There Exists a Triable Issue of Fact as to Whether the Congregation Failed to Cooperate in the Defense of the Underlying Action.**

As a second reason for disavowing coverage, GuideOne claims that the Congregation failed to cooperate in the defense of the Underlying Action, which constitutes a material breach of the policy of insurance and precludes the Congregation from coverage under the policy. I cannot grant summary judgment on this claim because there are genuine issues of fact concerning whether the Congregation cooperated with its insurer.

GuideOne alleges that the Congregation failed to cooperate by: (1) failing to produce a witness, resulting in a conditional order striking its answer; (2) misstating the ownership of the premises in question; (3) Rabbi Werzberger's appearing at a deposition after defense counsel warned him not to do so. Obviously, (2) falls out of the case, since I have concluded that there was no misrepresentation. So we are left to analyze whether GuideOne is entitled to judgment because of an undisputed failure to cooperate under either (1) or (3).

The Policy contained the following cooperation clause:

> 2. Duties in the Event of Occurrence, Offense, Claim or Suit.
> . . .
> c. You and any other involved insured must:

13

> (3) *Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; . . .*

(Thurm Decl. Exh. G, at 13 (emphasis added).) Under New York law, "the failure of an insured to cooperate with the insurer in it investigation of a claim constitutes a material breach of the contract of insurance, and is a defense to a suit by the insured on the policy." Evans v. International Ins. Co., 168 A.D.2d 374, 374, 562 N.Y.S.2d 692, 694 (1st Dep't 1990). Thus, if the Congregation failed to cooperate, GuideOne can escape liability under the policy.

To deny insurance coverage under New York law, "an insurance carrier must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured, after his or her cooperation was sought, was one of willful and avowed obstruction." Allstate Ins. Co. v. United Int'l Ins. Co.,16 A.D.3d 605, 606, 792 N.Y.S.2d 549, 550-51 (2d Dep't 2005).

The insurer alleging violation of the cooperation clause bears a heavy burden to show that the insured's failure to cooperate was deliberate. Thrasher v. United States Liability Ins. Co., 19 N.Y.2d 159, 168 (1967) (citations omitted); Mount Vernon Fire Ins. Co. v. 170 E. 106th St. Realty Corp., 212 A.D.2d 419, 420, 622 N.Y.S.2d 758, 759 (1st Dep't 1995) (citations omitted). The rationale for imposing a heavy burden on the insurer is "to protect an innocent injured party, who may well have relied upon the fact that the insured had adequate coverage, from being penalized for the imprudence of the insured, over whom he or she has no control." Thrasher, supra, 19 N.Y.2d at 420-21. However, the insurer need not show prejudice as a result of the lack

of cooperation of its insured to be entitled to summary judgment. Utica Mut. Ins. Co. v. Gruzlewski, 217 A.D.2d 903, 904, 630 N.Y.S.2d 826, 827 (4th Dep't 1995).

If the record contains evidence of partial cooperation and partial non-cooperation on the part of the insured, summary judgment may not be granted. C.I.T. Leasing Corp. v. Travelers Ins. Co., 145 A.D.2d 973, 974, 536 N.Y.S.2d 344, 345 (4th Dep't 1988) (holding that evidence that the insured partially cooperated in the investigation created a triable issue of fact).

I turn first to Item (3), because the record so clearly evidences a genuine issue of fact.

**The Werzberger Deposition**

GuideOne complains that on March 29, 2004, Rabbi Werzberger presented himself for examination before trial without the Congregation's lawyer being present. This is a serious allegation of non-cooperation. It is also hotly contested.

On March 29, 2004, Rabbi Werzberger submitted to a deposition in the Underlying Action at the office of Subin Associates, attorneys for the Individual Defendants. The Rabbi had been subpoenaed, allegedly as a non-party witness.

GuideOne maintains that the Rabbi went to be deposed after being advised (through his wife, who seems to have handled all conversations with Simon Lesser) not to appear for any depositions or other proceedings in the Underlying Action without being represented by a Simon Lesser attorney. (Thurm Decl. Exh. A ¶ 30.) GuideOne alleges that Renee Simon Lesser, designated defense counsel for the Congregation, was assured that the Rabbi would not present himself at Plaintiffs' counsel's office for deposition three days later. But he nonetheless showed up for the deposition and allowed himself to be deposed in the absence of counsel.(Id. ¶¶ 32-33, Exh. T, at 2.)

In her March 16, 2005 deposition, Renee Simon Lesser explained that Rabbi Werzberger failed to comply with the directive she gave to Chana Werzberger concerning the March 29 deposition:

> Q: What did you say to her?
>
> A: I said to her I have reviewed the document you forwarded to my office, it is a Notice to Take Deposition Upon Oral Examination, there are procedural defects, there was a note of issue that was filed by the plaintiff in the case, plaintiffs in the case, on or around March 18th, therefore, you should not go and I am telling you not to go. I will take care of objecting to it.
>
> > Mr. Molod: Wait. She did not finish the conversation. There may have been a reply to that conversation.
>
> A: To which she responded we will not be going to the deposition.
>
> Q: Who is we?
>
> A: Referring to her and her husband, Rabbi Hyman Werzberger.
> . . . .
> Q: Let's go to paragraph number 33. Turn the page, please. Did you ever advise anyone that the appearance and attendance at the deposition by Rabbi Human Werzberger was without the consent of Simon Lesser, P.C.?
>
> A: I am sure that I did.
> . . . .
> Q: When would this conversation have occurred?
>
> A: I would assumed at some point after I first became aware in July of 2004 that my client along with her husband showed up in your office and both of them gave testimony without any attorneys present.

(McElduff Decl. Exh. R and Exh. S; 32:21-33:13; 50:4-9; 50:14-20.)

The Congregation maintains that Lesser's position is without merit. First, it alleges that Rabbi Werzberger did not have to abide the instructions of Lesser because she did not represent

the Rabbi – she represented the Congregation. This is, of course, nonsense. The Congregation as an entity could only perform its duties under the cooperation clause through the actions of human beings. The Rabbi lived at the premises and worked for the Congregation as its religious leader.[3] Indeed, the mailing address of the Congregation, as indicated on the application for insurance, is "c/o Hyman Werzberger" at the Premises Address. If the Rabbi was receiving the Congregation's mail, he was certainly someone through whom the Congregation would and could have performed its contractual obligations. Therefore, he was required to cooperate with the insurer in the defense of the Underlying Action, and if the lawyer told him he could not appear for deposition or allow himself to be questioned without her being present, he was bound to cooperate.

The Congregation also disputes Lesser's claim that she gave the Werzbergers explicit instructions not to attend the deposition. Rather, Chana Werzberger maintained that Lesser said the Rabbi did not have to attend the deposition on March 29, 2004, but did not specifically instruct him not to attend:

> Q: One step at a time. You are familiar with the fact that your husband went once to testify without Ms. Lesser, yes or no?
>
> A: I am familiar because we got a subpoena.
>
> Q: I understand that.
>
> A: But I call (sic) Ms. Lesser and I told her I have a subpoena and, you know, she says, "You don't have to go." She didn't say don't go, she said, "You don't have to go."

(McElduff Decl. Exh. CC, at 22:12-21.)

---

[3] Whether the Rabbi was an "employee" in some technical Labor Law sense is irrelevant.

Though GuideOne asserted that the Werzbergers promised Simon Lesser that they would not attend the March 29 deposition, Chana Werzberger claimed this was untrue:

> Q: In that conversation that you had with her, did she ever tell you, "Don't go?"
>
> A: She said, "You don't have to go."
>
> Q: That is the only thing?
>
> A: I called her, she said, "You don't have to go."
>
> Q: You said, okay, you wouldn't go?
>
> A: No.
>
> Q: You didn't say that to her?
>
> A: No.

(Id., at 23:6-15.)

If Renee Lesser or another employee of Simon Lesser instructed the Werzbergers that the Rabbi was not to go to the office of Subin Associates without counsel from Simon Lesser, and the Rabbi ignored that directive, it could constitute willful non-cooperation.[4] Unfortunately, there are disputed issues of fact concerning what Lesser said. Summary judgment is, therefore, inappropriate.

---

[4] That might not be dispositive, since I would then have to consider whether this single instance of non-cooperation constituted a material breach, or whether the Congregation substantially performed its obligation under the cooperation clause. Ashline v. Genesee Patrons Coop. Ins. Co., 224 A.D.2d 847, 849, 638 N.Y.S.2d 217, 219 (3d Dep't 1996). Ordinarily, willful non-cooperation is only found "where there is a pattern of noncompliance for which no reasonable excuse can be offered or where the failure to cooperate is persistent." Levy v. Chubb Ins., 240 A.D. 2d 336, 337, 659 N.Y.S.2d 266, 268 (1st Dep't 1997). Of course, as will be seen in the next section, GuideOne alleges that this was far from the only instance of non-cooperation.

**Alleged Failure to Cooperate In Defense Generally**

GuideOne also contends that the Congregation failed generally to cooperate in the defense of the case, including by failing to assist counsel in responding to discovery requests and by failing to comply with various court orders. Here, the insurer's failure to adduce sufficient competent evidence in support of its motion means that the case must go to trial.

GuideOne maintains that the Congregation repeatedly failed to respond to the entreaties of counsel for the Individual Defendants to provide documentation and to appear for depositions. This non-cooperation, the insurer contends, resulted in the filing of two motions to strike the Congregation's answer in the Underlying Action and the issuance of an order conditionally granting dismissal of the case. (Plaintiff's Reply Memo, at 15-16.)

Certain facts are undisputed. On July 22, 2003, Herbert Subin, attorney for the Individual Defendants (as plaintiffs in the Underlying Action), executed an affidavit in support of the Individual Defendants' motion for an order striking the Congregation's answer in the Underlying Action. (Thurm Reply Decl. Exh. CC, at 1.) Subin cited the Congregation's failure to comply with the Preliminary Conference order of Judge Hubsher dated July 11, 2002, which directed the Congregation to appear for court ordered examination before trial on or before October 9, 2002, and the Congregation's failure to comply with an order of Judge Rappaport dated March 19, 2003, which directed the Congregation to appear on or before April 28, 2003. (Id.)

Subin also alleged that the Individuals Defendants had been ready to depose designees of the Congregation on October 9 and November 4, 2002, and April 28, 2003, but that the Congregation had failed to appear. (Thurm Reply Decl. Exh. CC, at 2.)

On August 13, 2003, Judge Schmidt of the New York State Supreme Court in Kings County ruled on the motion as follows: he ordered the Congregation to respond to the plaintiffs' July 3, 2002, demand for discovery and inspection and bill of particulars within 30 days. Judge Schmidt also instructed the Congregation to respond to the previous court orders dated July 11, 2002, and March 19, 2003, within 30 days. Depositions of all parties were to be completed on or before October 1, 2003. Finally, the plaintiffs were to file a note of issue before December 31, 2003, or have their action dismissed. (Thurm Reply Decl. Exh. DD.) In sum, the Congregation was to meet the plaintiffs' discovery demands by September 13, 2003, and complete its depositions two weeks later.

Apparently that did not happen, because on November 24, 2003, Subin again asked the Supreme Court to strike the Congregation's answer for failure to comply with the plaintiffs' discovery demands and failure to complete its depositions by October 1, 2003, as required by Judge Schmidt. (Thurm Reply Decl. Exh. EE, at 2.) If there was a ruling on this motion it has not been provided to me.

Ultimately, Chana Werzberger was deposed on February 11, 2004 and again on February 22, 2005. Rabbi Werzberger was deposed on March 29 and May 11, 2004 and again on February 22, 2005.[5] There is no evidence in the record that suggests that the Congregation complied with the October 1, 2003 deadline. There is also no suggestion in the record that the Individual

_____

[5] Lesser was present for Chana Werzberger's February 2004 deposition. (Thurm Decl. Exh. J, at 2.) The record indicates that Lesser was not at the February 22, 2005 deposition of Mrs. Werzberger but provides no evidence tending to show that Lesser was present or absent at the Rabbi's depositions on May 11 or February 22. (Thurm Decl. Exh. W, at 2.) Whether Lesser attended these other depositions is irrelevant, since GuideOne objected only to Lesser's absence at the Rabbi's March 29 deposition.

Defendants filed their Note of Issue prior to March 18, which was well beyond the Judge's deadline.[6]

The above recital paints someone in a bad light. The question, however, is whom.

According to <u>Allstate Ins. Co. v. United Int'l Ins. Co.</u>, to deny insurance coverage under New York law, the insurer must demonstrate that it employed diligent efforts reasonably calculated to obtain the insured's cooperation. <u>Supra</u>, 16 A.D.3d at 606, 792 N.Y.S.2d. at 550-51. These reasonable efforts on behalf of the insurer are not assumed, but must be demonstrated by the insurance company. <u>Id.</u> Despite the heavy burden placed on it by a law that is protective of insureds and not insurers, GuideOne produced precious little evidence tending to show that the reason for all these missed deadlines was a lack of cooperation by the Congregation. Attorney Lesser gave some testimony about her attempts to contact Chana Werzberger after the March 29, 2004 deposition, but said that, "None of my phone calls have been returned, my certified letters have been not responded to nor have any other letters to Ms. Werzberger been responded to." (Thurm Decl. Exh. U, at 51.) However, the motions to strike occasioned by the alleged failure of the Congregation to cooperate in the discovery process preceded March 29, 2004, so Lesser's efforts to obtain cooperation after March 29, 2004 are of no moment. GuideOne is required to demonstrate that it made diligent efforts to obtain the Congregation's cooperation prior at the time these deadlines were missed, in 2002 and 2003. None of the testimony in the record is directed to that period.

_____

[6] This is in keeping with the unfortunate but well-documented tendency of some practitioners in the state courts simply to ignore judicial directives if they find them inconvenient.

GuideOne asserts that it cannot provide documentation of Attorney Lesser's efforts to seek the Congregation's cooperation because the documents demonstrating Lesser's purported efforts are privileged and are in the possession of the Congregation. (Plaintiff's Reply Memo, at 16.) I have rarely heard such a lame excuse.

Though communications between an attorney and his or her client are generally privileged, they are discoverable under some circumstances. Under the common interest doctrine, when one attorney represents multiple persons, "communications made to the shared attorney to establish a defense strategy remain privileged as to the rest of the world." The doctrine dictates that the clients may not "later assert the privilege against each other after their interests become adverse." North River Ins. Co. v. Columbia Cas. Co., No. 90 Civ. 2518 (MJL), 1995 WL 5792, at *2 (S.D.N.Y. Jan. 5, 1995) (citations omitted).

In North River, this court explained: "It is clear that when an insurer actually retains counsel to provide a defense for the insured, there is a common legal interest. As a consequence, communications between the insured and the attorney are privileged as to outside parties, but not as to the insurer." Id., at *4 (citations omitted).

New York courts have similarly applied the common interest doctrine to insurance cases, holding that communications between an insured and counsel supplied by the insurer are not privileged in an action between insured and insurer. Goldberg v. American Home Assurance Co., 80 A.D.2d 409, 413, 439 N.Y.S.2d 2, 5 (1st Dep't 1981).

Thus, while the Congregation's discussions with Simon Lesser are privileged and may not be disclosed to the Individual Defendants, they may surely be disclosed to GuideOne, because, in the context of this dispute over coverage, they are not privileged as to GuideOne.

If the Congregation refused a demand from GuideOne to produce documents relevant to this dispute, it did so wrongfully.[7] As far as this Court is aware, however, GuideOne did not apply either to me or to the assigned Magistrate Judge who was supervising discovery to obtain the records that would demonstrate "Attorney Lesser's efforts to prevail upon the Congregation to cooperate in the defense of the action." (See Plaintiff's Reply Brief, at 16.) It could not hide behind a nonexistent attorney-client privilege to avoid doing so. To the extent it was necessary to shield the documents from the Individual Defendants (as to whom the documents were, of course, not privileged), the learned Magistrate Judge could easily have entered an appropriate order.

There is clearly some evidence in the record from which I could infer that the Congregation was not cooperating with Simon Lesser in the defense of the action. At this point, however, GuideOne has not satisfied its heavy burden of demonstrating that the Congregation engaged in willful non-cooperation as a matter of law. I will order this case returned to the supervision of the Magistrate Judge so that appropriate order can be entered to obtain the mysterious documentation that is in the hands of the Congregation prior to trial. But the insurer gets only one crack at summary judgment, and because it has failed to meet its burden, that motion is denied.

---

[7] It is not clear to me why the Congregation has Simon Lesser's files, if indeed it does have Simon Lesser's files. For that matter, no one has explained whether Simon Lesser has been relieved of its representation by the State Supreme Court. I cannot imagine why it would give up its files if it had not been relieved.

**The Cross Motion for a Default Judgment is
Denied, but the Cross Motion for Summary
Judgment is Granted in Part**

In its answer to GuideOne's complaint, the Congregation asserted two counterclaims against GuideOne: (1) GuideOne violated New York General Business Law §349 and New York Insurance Law §2601 in that it knowingly misrepresented pertinent facts or policy provisions relating to the coverage at issue; (2) GuideOne breached its contract with the Congregation when it refused to defend and indemnify the Congregation in the Underlying Action. (Thurm Decl. Exh. D, at 6-8.)

The Congregation seeks an order entering a default judgment against GuideOne for failing to file an reply to these counterclaims in a timely fashion. That motion is denied.

According to Rule 12(a) of the Federal Rules of Civil Procedure, a plaintiff has 20 days from the service of the answer containing counterclaims to respond to those claims. FED. R. CIV. P 12(a). Though the Congregation submitted its answer on January 4, 2005, GuideOne did not respond to the Congregation's two counterclaims until April 14, 2005. (Thurm Decl. Exh. D, at 8; Reply Declaration of Milton Thurm ("Thurm Reply Decl").) This was, indisputably, late. In his Reply Declaration on behalf of GuideOne, Milton Thurm acknowledged that the plaintiff did not timely respond to the Congregation's counterclaims because it overlooked them while dealing with the removal of this case to federal court. (Thurm Reply Decl. ¶ 2.)

A default "should not be entered when it would be promptly set aside under Fed. R. Civ. P. Rule 55(c)." National Trust Co. v. American Home Assurance Co., No. 86 Civ. 1406-CSH,

1987 WL 5837, at *3 (S.D.N.Y. Jan. 22, 1987).[8] The Second Circuit has held that, under Rule 55(c), "the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

In light of the fact that GuideOne has filed a Reply, I am not inclined to grant a default judgment. I accept counsel's testimony that he simply overlooked the counterclaims, rather than chose willfully not to respond to them. Though he filed his Reply two and a half months late, the Congregation fails to show how it was prejudiced thereby. Finally, because the Congregation's second counterclaim is simply the converse of GuideOne's claim seeking a declaration of non-coverage, GuideOne obviously has a potentially meritorious defense to the counterclaim. Its original claim sets forth its defense. Issue has been joined on the original claim, so whether or not there is coverage will be resolved at trial. Entering a default makes no sense.

However, I am dismissing the Congregation's first counterclaim sua sponte, because when I considered whether GuideOne has a meritorious defense to that counterclaim, I concluded that it fails to state any claim on which relief can be granted.[9]

The Congregation's first counterclaim alleges that GuideOne violated New York General Business Law §349 and New York Insurance Law §2601. However, the Congregation has no

---

[8] Though the Congregation seeks judgment by default on its counterclaims, I apply the standards of Rule 55(c) rather than those of Rule 60(b), since a default has not yet been entered. See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).

[9] My summer intern – a student between her first and second years of law school – figured this out on her own, with no help whatever from GuideOne's lawyer. He never bothered to brief the relevant issues.

claim under § 2601 because New York does not recognize a private right of action under this law. Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d 603, 614 (1994).

The Congregation also has failed to plead a legally sufficient claim under § 349 of the General Business Law. Section 349 does not apply to a breach of a private contract affecting no one but the parties to the contract, because that conduct "is not an act or practice affecting the public interest." Asbeka Industries v. Travelers Indem. Co., 831 F. Supp. 74, 88 (E.D.N.Y 1993). Claims under § 349 must relate to "consumer-oriented" conduct that has a broad impact, and is generally inapplicable to private contract disputes such as this one. Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 145, 630 N.Y.S.2d 769, 772 (2d Dep't 1995) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20 (1995)). The Court in Teller noted: "In other words, the deceptive act or practice may not be limited to just the parties. While the statute does not require the plaintiff to prove a repetition or pattern of deceptive behavior . . . it does require a showing of potential impact on consumers at large." Teller, supra, at 772.

Here, all the Congregation alleges is that GuideOne threatened to refuse to indemnify it in the Underlying Action. The facts alleged to constitute deceptive acts are limited to these parties. The Congregation has not attempted to plead more broadly. Therefore, its GBL counterclaim fails to state a cause of action as well.

## Conclusion

GuideOne's motion for summary judgment is denied. The Congregation's cross-motion for summary judgment is granted to the extent of dismissing the claim that it made a material misrepresentation concerning its interest in the property on its application for insurance, and is otherwise denied. Finally, the Congregations' motion for default judgment on the counterclaims is denied and the First Counterclaim is dismissed, sua sponte, for legal insufficiency. This constitutes the decision and order of the Court.

Dated: July 28, 2005

_____

U.S.D.J.

BY FIRST CLASS MAIL TO ALL COUNSEL